WILLIAM H. BINION, and others, plaintiffs in error, vs. EM-
SON MILLER, administrator, defendant in error.

[1.] If an administrator manage his intestate's estate fairly and honestly, but
neglects to make his returns so as to exhibit the state of his accounts in the
Ordinary's office, he is not on that account, liable to pay a higher than the
ordinary rate of interest chargeable against an administrator; but if, on de-
mand of a distributee, he fails or refuses to make a full exhibit of his accounts,
and come to a settlement, he subjects himself to the costs and expenses of a
suit which his default may have made necessary.

[2.] If a receipt be given by a guardian to an administrator for negroes express-
ed to be in full of his ward's distributive share of the estate, and it is insisted
that it is expressed to be in full, because all other accounts were balanced
and settled, which is nevertheless disputed by the wards, whether the receipt
was in full is a question for the consideration of the jury.

[3.] To bind infants by a settlement made by the administrator with their guar-
dian, it must be a full and final settlement without fraud, or if fraudulent, the
fraud must have been known to the infants, and they must have acquiesced
for the period of the statutory bar.

In Equity, from Schley county. Tried before Judge
WORRILL; and motion for new trial refused, at August Term,
1858.

This was a bill filed by William H. Binion, and Thomas
M. Bailey and wife, against Emson Miller, administrator, in
right or stead of his wife, of the estate of William Binion,
deceased, late of Columbia county. The bill was for an
account and distribution of said estate; complainants Wil-
liam H. Binion and Mrs. Thomas being the children of in-
testate, and Miller, the defendant, being the husband of the
widow of deceased, and administrator in right thereof.

Defendant answered the bill, and denied that he had any
of said estate in hand unaccounted for; that the same had
been distributed equally between defendant in right of his
wife, the widow of the intestate, and complainants, whose
share upon settlement made in 1836, had been paid and
turned over to their guardian and a receipt in full taken and
made an exhibit to the answer.

It appeared that William Binion the intestate died in Columbia county in the year 1823; that his widow administered on the estate and sold some of the same to pay debts; that in 1835, she intermarried with defendant, then of Monroe county, who received all the estate of deceased, then in the hands of his wife, as administrator appointed in her right; that he soon after sold all the perishable property and had the negroes partitioned between complainants and himself in right of his wife; that he had the estate transferred to Monroe county, and made his returns to the Ordinary of said county; that on the 21st December, 1836, defendant delivered the negroes to the guardian of complainants, Robert Rozar, and took from him receipts, as follows:

"Received of Emson Miller, administrator in right of his wife, of the estate of William Binion, deceased, three negroes, Sharlott, Harriet and Dilsey, valued at sixteen hundred dollars, and allotted to William Binion, orphan of said William Binion, deceased, as his distributive share of the estate of said deceased. Said negroes being received by me in full of the distributive share of said estate due said orphan.

December 21, 1836.

(Signed,)        ROBERT ROZAR, Guardian of
Wm. Binion.

There was another receipt in the same terms and words, of same date, for three negroes, valued $1,675, allotted to Laura Ann Binion (now Mrs. Baily.)

It further appeared that a negro man Jerry, belonging to said estate, and mentioned in the inventory and appraisement, had been sold by Mrs. Binion before her marriage with defendant, and which complainants alleged had never been accounted for, as well as the hire of some of the other negroes, and the proceeds of the sale of the perishable property, monies, &c., received by defendant, and by his wife before their intermarriage; and that all that had ever been received by complainant was the negroes mentioned in said receipts.

The case was submitted to the jury, upon the bill and amendments thereto—the answer and amended answer, the testimony of a number of witnesses, and the charge of the Court, who found for the plaintiff fifteen hundred and thirty-eight dollars and ninety-eight cents.

Whereupon, defendant moved for a new trial upon the following grounds:

1st and 2d. Because the verdict was contrary to law and evidence.

3d. Because the Court erred in charging the jury, that the receipts given by Rozar the guardian of complainants, and read in evidence by defendant, were for the negroes mentioned therein, and for nothing else; that it was for the Court to construe the receipts, and the jury were bound by said construction.

4th. Because the Court erred in charging the jury, that if they believed that Mrs. Binion sold Jerry and did not return and account for the price or sums received for him, and that Miller the defendant, did not settle and account for him, they must find for the price or sum received by her, or for such part thereof, as was not accounted for, with interest: That the rule as to interest was to compound every six years at eight per cent., until 1845, then at seven per cent, compounded every six years.

5th. Because the Court (when requested by defendant's counsel,) refused to charge the jury, that if they should believe that a settlement of the administration took place between defendant and Rozar, the guardian, that their forbearance to make a demand within the statutory period, is evidence that complainants had been fully paid, or that they acquiesced in the settlement.

After argument upon the motion for a new trial, the Court granted the same, on the ground, that the Court erred in its charge to the jury, as to the rule to be adopted by them in

computing interest, (as set forth in the 4th ground for a new trial,) and on no other ground.

To which decision, complainants except and assign the same as error.

B. HILL, for plaintiffs in errror.

SMITH & POU; and BLANFORD & CRAWFORD, *contra.*

*By the Court.*—McDONALD, J. delivering the opinion.

There were five distinct grounds on which the defendant in the Court below moved for a new trial. The two first grounds, 1st. that the verdict of the jury was contrary to evidence, and 2d, that it was contrary to law may be put in one, neither of which will it be necessary for this Court to consider further than they may be involved in the other grounds. The Court below granted a new trial, on the single ground, that the charge to the jury on the subject of interest, was contrary to law. The assignment of error is special that, a new trial ought not to have been granted on that ground. For the defendants in error, it is insisted, that if the Court in granting a new trial on that special ground erred, yet if there are other grounds in the motion on which it ought to have been granted, the judgment of the Court below should be affirmed. We will examine the several grounds in the motion with the exception already stated.

[1.] I will first refer to that on which the presiding Judge in the Court below granted a new trial. The Court charged the jury that, if they believed Mrs. Binion sold Jerry and did not return an account for the price or sum received for him, and that the defendant Miller did not settle and account for him, they must find for the price or sum received by her, or for such part thereof as was not accounted for, with interest; that the rule as to interest was to compound every six years at eight per cent. until 1845, then at seven per cent. com-

pounded every six years. The statute of 1847, *Cobb 336,.* prescribes the rate at which interest shall be computed against executors, administrators and guardians, but the rule thereby established applies to cases in which they are guilty of no misappropriation of the trust fund in their hands, or of conduct which subjects them to the imputation of wrong or fraud. Whether the charge was right, depends on the bill,. answer and proofs. The administratrix had charged herself with the negro Jerry, in the appraisement, and was therefore guilty of no fraud or concealment in withholding from the record that evidence of her liability. She charged herself with him. It is true she ought to have charged herself with the price, when he was sold, and to have accounted for that price according to the facts of the case in her return; but if she acted honestly in the matter, and did, in the management of the estate, dispose of the proceeds of the sale, or suffered an inevitable loss of a part of the money arising from the sale, in a manner that the Ordinary ought to have passed the accounts, if they had been regularly and specially presented in his Court, then the defendant ought not to be subject to the harsh rule for computing interest which is applied to cases only in which a trustee departs from special directions under which he holds a trust, as where a will directs the fund to be accumulated, or where the *fund* is mismanaged. But for the mere omission to make a return of honest and upright management, she ought not to be held to such an account. But the *cestui que trust* ought not to be injured by the neglect of a trustee to make regular and explicit returns according to law; and therefore, when, under such circumstances, if the *cestui que trust* calls on his trustee for a settlement, and he refuses to or cannot make a full and fair exhibit of his trust accounts, a Court of Chancery ought, and I apprehend would hold him accountable for costs and expenses of a litigation occasioned and made necessary by his default. If the charge had been given with these qualifications, it would have been right; we think that

the presiding Judge in reconsidering and overruling his charge, is sustained by our former interpretation of the law.

[2.] I will return now to the third ground taken in the motion for a new trial; that the Court erred in charging the jury that the receipts given by Rozar the guardian of complainants, and read in evidence by defendant, were for the negroes mentioned therein, and for nothing else; that it was for the Court to construe the receipts and the jury were bound by the construction. If the Court did so charge, we think it was error. The terms of the receipts are certainly broad enough to embrace a final settlement of the estate, and it was insisted on the part of the defendant that the entire estate was settled with the guardian, and that on that settlement, the receipts were given. This was disputed by the complainants, and there was therefore an issue between the parties on that subject. There was also conflicting evidence as to the settlement, and the whole subject ought to have been submitted to the jury. There can be no doubt, that the weight of the evidence in regard to the acts of the commissioners is that they were appointed to divide the negroes only, belonging to the estate, and that they did no more than to divide them.

The original answer of the defendant states that the commissioners were appointed to divide the negroes. The record from the Court of Ordinary of Monroe county, shows that the commissioners were sworn and divided the negroes, and shows the share apportioned to each distributee; and it shows, moreover, that they divided nothing more. The answer says further, that the defendant had settled fully with the guardian concerning the estate, but exhibits no proof of it, except what is contained in the receipt for the negroes, and the receipts say that the negroes are in full of the distributive shares of the estate due the wards respectively. It is just such a receipt as would probably have been given, if, as to everything else, accounts were fully balanced between the administrator and the wards, as the administrator con-

tends it was, after retaining a small balance in his hand due by him to them, for the difference between their lots of negroes, and the lot coming to him in right of his wife. It is susceptible of such construction. I do not say that the jury are so to construe it, but the question is to be submitted to the jury, whether the receipt was for a full and final settlement of the estate between the guardian and ward.

[3.] We do not think that the Court ought to have charged the jury as requested by the defendants counsel, if the request was as stated in the last ground in the motion for a new trial. The settlement to have bound these defendants in error, must have been full and final, without fraud or concealment, or if it was not full and final, and without fraud or concealment, it must have been known by the defendants in error, that it was not full and final, but that the plaintiff in error claimed it to have been full and final, and that they acquiesced in it for the period of the statutory bar after they arrived at the age of twenty-one years; and if the fraud, if any, was known to them, and acquiesced in, for the like period, after they attained majority, they were bound by it. There are facts in the case which ought to be considered also, in determining on the legality of this request, as applicable to them. It was a long time after the alleged settlement took place, that this suit was instituted, and the administrators had not been dismissed from the administration; the answer of plaintiff in error shows that he still holds the title of his intestate for a tract of land drawn by his intestate, which has not been distributed; he answers that he was paid the difference between the value of his lot of negroes and the lots of the other distributees of the estate by retaining a balance which he owed them, while the guardian deposes, that he paid this difference in cash; he puts up a claim, to some extent, for the board, clothing and education of defendants in error, while the answer and exhibits, show that these expenses were paid by the common property of the estate; the answer says in substance, that the produce made,

over and above the cotton, was not more than sufficient to support the children.   I will not go further.   But these things show that the request as asked of the Court, ought not to have been given in charge to the jury, without explanations of the legal principles to which these facts and circumstances applied, and which ought to have led to a material qualification of the request.   That the Court refused to give that request, as submitted, in charge to the jury, was not a ground for granting a new trial, and there was no error committed in refusing it on that ground.

Judgment affirmed.